UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ATTACK PROPERTIES, LLC, | ) | Judge Joan B. Gottschall |
| | ) | |
| Appellant/Debtor. | ) | Case No. 12 C 5892 |
| | ) | |

## MEMORANDUM OPINION & ORDER

On April 13, 2012, Attack Properties, LLC ("Attack Properties"), by Timothy Grover, its sole owner and representative, filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the Northern District of Illinois. On July 11, 2012, the bankruptcy court dismissed the case. This appeal followed. Attack Properties challenges both the dismissal of the case and the bankruptcy court's order excusing the receiver appointed in a state-court foreclosure action from turning over the property at issue in the bankruptcy in compliance with 11 U.S.C. § 543(b). For the reasons stated below, the court affirms the orders of the bankruptcy court excusing the receiver from turnover and dismissing the case.

### I. BACKGROUND[1]

Attack Properties owns an athletic training facility located at 2641 West Harrison Street in Chicago ("the Property"). Grover is the sole owner of both Attack Properties and Attack Athletics, Inc. ("Athletics, Inc."), a professional athletic training business that

---

[1] No material facts appear to be in dispute, and so the court has adopted the facts set out by the bankruptcy court unless otherwise noted.

leases and operates out of the Property.[2] In 2007, Old Second National Bank ("the Bank") loaned Attack Properties $9.946 million in order to develop the Property for Athletics, Inc.'s use. Athletics, Inc. and Grover guaranteed payment on the note. Attack Properties then defaulted on the loan, and in 2010, the Bank filed a foreclosure action in Illinois state court. *See Old Second Nat'l Bank v. Attack Props.*, No. 2010 CH 41352 (Cook Cnty. Cir. Ct., filed Sept. 23, 2010) ("the foreclosure action"). The state court appointed a receiver, and, given Athletics, Inc.'s default, the receiver filed a separate action seeking eviction. *See Hussey v. Attack Athletics*, No. 2011 M1 712640 (Cook Cnty. Cir. Ct., filed June 15, 2011) ("the eviction action"). In August 2011, the court in the eviction action ordered Athletics, Inc. to turn over the Property to the Bank, and in September 2011, that court entered judgment in favor of the receiver in the amount of $384,474 in past rent and late charges.

Although Grover and Athletics, Inc. were ordered to turn the Property over to the Bank, they remained in possession of the Property for several months; they also continued to collect rental payments and payments for training services. In the foreclosure action, the receiver moved for a rule to show cause why Grover and Athletics, Inc. should not be held in contempt for violating the state court's prior orders in the case. Grover and Athletics, Inc. responded by attempting to halt the eviction. The foreclosure court was not convinced, and ordered relinquishment of the Property on December 2, 2011. The court also ordered Attack Properties, Athletics, Inc., and Grover to turn over to the receiver "all monies in their possession or received since March 21, 2011 from any person or entity for the use, access or any other reason relating to the Property."

---

[2] By all accounts, Grover and the Athletics, Inc. staff are talented at what they do; in fact, Athletics, Inc.'s clients have included basketball players like Michael Jordan, Scotty Pippen, and Charles Barkley.

When the receiver finally took possession of the Property in December 2011, he discovered that Athletics, Inc. and Grover had received over $750,000 for training services conducted at the Property after the receiver had been appointed. The issue was raised before the foreclosure court, and that court determined that the Bank had made a *prima facie* showing that Attack Properties, Athletics, Inc., and Grover were in contempt of the original order appointing the receiver. The court required them to show cause why they should not be held in contempt. In January 2012, the foreclosure court also entered a judgment of foreclosure against Attack Properties on the note and against Athletics, Inc. and Grover on the guarantees. This resulted in a judgment of $10,170,452 in favor of the Bank.

The Property was scheduled for a foreclosure sale on April 13, 2012, but just minutes before the sale could take place, Attack Properties filed a chapter 11 bankruptcy petition.[3] The resulting bankruptcy case is the single-asset real estate case at issue here. As a result of the bankruptcy filing, the automatic stay provision of 11 U.S.C. § 362 kicked in, and the planned foreclosure sale was put on hold. *See In re Met-L-Wood Corp.*, 861 F.2d 1012, 1015 (7th Cir. 1988) (noting that the automatic stay provision of § 362 prevents a secured creditor from proceeding with a scheduled foreclosure sale). Three days later, the Bank moved on an emergency basis pursuant to 11 U.S.C. § 543(d)(1) for an order excusing the receiver from turning over the property (as 11 U.S.C. § 543(b)(1) would otherwise require). On May 9, 2012, the bankruptcy court granted the motion. In its oral ruling, the court found there had been prepetition mismanagement and that there was no real likelihood of reorganization, which meant that

---

[3] Attack Properties' schedules valued the Property at $4 million and listed claims secured by the Property totaling $12,211,359 (the Bank's $10,170,452 first mortgage as well as a $2,040,907 second mortgage belonging to an entity called Sofer Cor 504), as well as unsecured claims totaling $1,506,700.

3

turnover of the Property was not in the best interest of creditors. The court explained that, given that Grover had violated the foreclosure court's order by failing to pay income and rent to the receiver, and that Grover had taken money from Attack Properties' business account and used it for personal expenses, the court had no confidence that Grover and Attack Properties would use the Property for the benefit of the creditors. Given the lack of progress in the case, the bankruptcy court invited motions to dismiss.

On May 23, 2012, the Bank filed a motion to dismiss pursuant to 11 U.S.C. § 1112(b). While that motion was being briefed, the Bank assigned its interest in the loan to Ringgold Capital IV, LLC ("Ringgold"). In evaluating the motion to dismiss, the bankruptcy court commented on Attack Properties' many deficiencies in the bankruptcy proceedings, including its failure to move the case forward, its neglect in retaining counsel under 11 U.S.C. § 327(a), its failure to use cash collateral pursuant to the requirements of 11 U.S.C. § 363(c), its neglect in proposing (or even indicating that it was formulating) a disclosure statement or reorganization plan, and its failure to file monthly operating reports. After noting that "nothing ha[d] been done" over the past three months, and that the ninety-day stay period set out in 11 U.S.C. § 362(d)(3) would expire the next day, the bankruptcy court dismissed the case. Attack Properties has now appealed to this court, and the court has expedited its review in light of the foreclosure sale scheduled to take place on September 19, 2012.

## II. LEGAL STANDARD

This court reviews a bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009) (citing *In re ABC-Naco, Inc.*, 483 F.3d 470, 472 (7th Cir. 2007)). Mixed questions

4

of law and fact are generally reviewed for clear error. *See In re Griffin Trading Co.*, 683 F.3d 819, 824 (7th Cir. 2012) (citing *Levenstein v. Salafsky*, 414 F.3d 767, 773 (7th Cir. 2005), and noting that clear error typically applies except in limited instances, such as cases presenting constitutional questions); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). *But see Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011) ("Mixed questions of law and fact are subject to de novo review.").[4] Where the bankruptcy code has committed a decision to the discretion of the bankruptcy court—such as dismissal for cause under 11 U.S.C. § 1112(b)—that decision is reviewed for abuse of discretion. *See Wiese*, 552 F.3d at 588; *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994). A bankruptcy court has abused its discretion where its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or where the record contains no evidence to rationally support the decision. *Wiese*, 552 F.3d at 588 (citing *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)).

### III. ANALYSIS

A chapter 11 case may be dismissed or converted to a chapter 7 case pursuant to 11 U.S.C. § 1112(b), which establishes a three-part inquiry. First, under § 1112(b)(1), the bankruptcy court must determine whether the party moving for dismissal has established that "cause" for dismissal exists.[5] A non-exhaustive list of examples of

---

[4] *Stamat* cites *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004), for this proposition, and *Mungo* in turn cites to *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986). But *In re Ebbler* does not actually state that mixed questions of law and fact are subject to de novo review; instead, it states that "[t]he factual determinations are subject to the clearly erroneous standard; but the manner in which these factual conclusions implicate the legal [issue] is subject to a *de novo* review."

[5] Section 1112(b) has been amended twice in recent years: by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat 23, and again by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat 3557. The 2005 amendment to § 1112(b)(1) expressly placed the burden of establishing cause for dismissal with the movant. In 2010, however, that language was deleted; the statute now simply states that a case may be dismissed "for cause." Despite the change, courts have continued to conclude that the burden to show cause lies with the movant.

"cause" is provided in § 1112(b)(4). Should the court find cause for dismissal, the case must be dismissed *unless* (1) the court "specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," *and* (2) the debtor or another party in interest establishes that (a) "there is a reasonable likelihood that a plan will be confirmed" within a certain time frame, and (b) "the grounds for converting or dismissing the case include an act or omission of the debtor . . . (i) for which there exists a reasonable justification . . . and (ii) that will be cured within a reasonable period of time fixed by the court." § 1112(b)(2). Third, if the non-movant fails to meet this burden, under § 1112(b)(1), the court determines whether dismissal or conversion to chapter 7 would be in the best interests of creditors and the estate. This court addresses the "cause" issue first.

### A. Cause for Conversion or Dismissal

#### 1. Failure to Satisfy Reporting Requirement

The bankruptcy court concluded that cause existed to dismiss or convert the case for two reasons. First, it determined that Attack Properties had failed to timely file reports required under 11 U.S.C. §§ 1106(a)(1) and 704(a)(8). *See* 11 U.S.C. § 1112(b)(4)(F) ("[T]he term 'cause' includes . . . unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter."); § 704(a)(8) (where the business of the debtor is authorized to be

---

*See In re Colbran, LLC*, --- B.R. ---, 2012 WL 2803726, 3 (Bankr. D. Mass. July 10, 2012) ("[E]ven after the Technical Amendments, the language of §§ 1112(b)(1) and (2) taken together suggests that initially the burden is on the movant to show cause which the debtor must then rebut."); *In re Julian*, No. 11-30151(LMW), 2012 WL 506573, at *3 (Bankr. D. Conn. Feb. 15, 2012). This court agrees with that interpretation. Although the amendment was labeled "technical," a court must apply the usual tools of statutory construction to determine whether the deletion was meaningful. *See United States v. R.L.C.*, 503 U.S. 291, 305 n.5 (1992). Here, reading §§ 1112(b)(1) and (2) together, the statue suggests that the burden-shifting framework remains in place. Such an interpretation, furthermore, is consistent with the placement of the burden on the moving party in a motion to dismiss pursuant to Federal Rule of Civil 12(b)(6). The court concludes that the aim of the amendment was concision, not a substantive change.

operated, the trustee[6] is obliged to file with the court "periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the . . . court requires"). The court noted that Attack Properties had not filed a single report during the entirety of the three months that had passed since the case was filed, nor had it provided any reason for failing to do so.

Attack Properties argues that it was excused from this obligation, because the receiver in the foreclosure action had actual possession of the Property, precluding Attack Properties from operating the business. Ringgold responds that although the receiver was left in place, Attack Properties was in all other respects unhindered with respect to its debtor-in-possession status under chapter 11 and was therefore responsible for filing monthly operating reports.

Although failure to satisfy a reporting requirement is "cause" for dismissal under § 1112(b)(4)(F), the court cannot affirm the bankruptcy judge's dismissal of the case on this basis. Section 704(a)(8) of the bankruptcy code states:

> [I]f the business of the debtor is authorized to be operated, [the trustee shall] file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires[.]

11 U.S.C. § 704(a)(8).

In concluding that Attack Properties had an obligation to file monthly operating reports, the bankruptcy court reasoned that the duty to file the reports did not shift to the

---

[6] Although § 704 references the trustee's duties, "the debtor in possession in a Chapter 11 case is within the meaning of trustee . . . when no trustee has been appointed." *In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888, 894 (Bankr. S.D.N.Y. 1997) (emphasis deleted). This is true even though, as here, a receiver has actual possession of the Property. *Id.*

7

receiver solely because it happened to be in possession of the property, *see In re Madison Ave.*, 213 B.R. at 888, and that Attack Properties, as a debtor-in-possession, therefore retained its duties under §§ 1106 and 704(a)(8).

The bankruptcy court, however, did not reconcile the duty set out in § 704(a)(8) with its own conclusion that Attack Properties was not operating as a business at the time the bankruptcy petition was filed. The bankruptcy court stated repeatedly in its July 11, 2012, order dismissing the case that Attack Properties was "not an operating business," and the parties have not argued otherwise in their filings to this court. Nor do the facts in the record on appeal indicate that Attack Properties was "authorized to be operated" during the time that monthly operating reports would have been required. The receiver took possession of the Property in December 2011, when Attack Properties was evicted, months before the bankruptcy petition was filed on April 13, 2012. The bankruptcy proceeding was a single-asset real estate case, and the Property was Attack Properties' only asset. Essentially, the Property was the business, and without possession of the Property, Attack Properties could not operate. Therefore, under the plain language of § 704(a)(8), "reports and summaries of the operation of [the] business" were not required.

2. <u>Reasonable Likelihood of Successfully Confirming Reorganization Plan</u>

Although the court disagrees with the bankruptcy court's conclusion as to Attack Properties' failure to meet the reporting requirement, the bankruptcy court cited an additional "cause" for dismissal. It concluded that Attack Properties had no reasonable likelihood of successfully confirming a plan of reorganization. The bankruptcy court did not abuse its discretion in dismissing the case on this ground.

8

In concluding that Attack Properties had no reasonable likelihood of reorganization, the bankruptcy court noted that, eighty-nine days after filing a bankruptcy petition, Attack Properties had yet to propose a plan for reorganization. The court further noted that, pursuant to 11 U.S.C. § 362(d)(3), the court was required after ninety days to lift the stay in the case unless the debtor had filed a plan for reorganization or commenced monthly payments. The court did not believe that a plan could be filed in time to avoid the lifting of the stay.

The court also concluded that, even *were* Attack Properties to propose a plan for reorganization, the plan could not be confirmed pursuant to the requirements of 11 U.S.C. § 1129(a), which requires, among other things, that "each class of claims or interests . . . has accepted the plan; or . . . is not impaired under the plan." § 1129(a)(8). The bankruptcy court found it impossible that Ringgold, having moved for dismissal, would accept a reorganization plan, and both secured and unsecured claims against Attack Properties would be impaired by the plan because there was no indication that the claims would be paid in full on the plan's effective date. The plan would therefore have to satisfy § 1129(b), which allows a plan to be confirmed without meeting the requirements of § 1129(a)(8) if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." According to the bankruptcy court, Attack Properties showed no ability to meet these requirements because a plan could only be "fair and equitable" within the meaning of § 1129(b)(2) if Ringgold, as a secured creditor, received "payments totaling at least the allowed amount of [its claim] as of the effective date of the plan." *See* § 1129(b)(2)(A)(II). As to the unsecured claims, such creditors would have to either

9

receive property equal to their claims, or no holder of an interest junior to the unsecured claims could receive property under the plan. *See* § 1129(b)(2)(B). Because Attack Properties lacked any current income and owed $4 million to Ringgold and nearly $10 million in unsecured debt, it had no ability to pay its claims. Nor could any new financing of the business be secured by a mortgage on the property that would take priority over the claims of Ringgold and the junior creditors, and Attack Properties had not proposed any source of potential revenue that would allow it to pay its claims in a reasonable period of time.

The court finds no clear error in the bankruptcy court's factual findings concerning the unlikelihood that Attack Properties could successfully confirm a plan of reorganization. It is undisputed that Attack Properties did not file a reorganization plan, and that, pursuant to § 362(d)(3), the bankruptcy court would be required after ninety days to lift the stay against actions against the Property. Attack Properties argues in its brief to this court that the ninety-day period had not yet elapsed when the case was dismissed, but eighty-nine days had already expired, and Attack Properties offers no evidence that it was preparing to file a reorganization plan. Moreover, the court finds nothing in the record that indicates that Attack Properties had access to new capital or to sufficient income to allow it to pay down its debt, in order to successfully have a reorganization plan confirmed under § 1129(b). *See In re Franklin*, --- B.R. ---, 2012 WL 3470897, at *4 (Bankr. N.D. Ill. Aug. 15, 2012) (holding that debtor had no reasonable possibility of successful reorganization when the debtor owed more than the value of the property and had insufficient income to meet its monthly obligations). Attack Properties argues in its brief that it was in "active negotiations" with Metropolitan Capital Bank &

Trust to secure new financing, but it does not respond to the bankruptcy court's concern that this proposed financing was to be secured by a "first mortgage" on the property, to which the existing creditors were unlikely to consent. Attack Properties further argues that its real-estate taxes had been substantially reduced, and that it had potential for new income, given its plan to lease the Property to a university athletic team, and given Grover's earning power as an athletic trainer. But it provides no specific information as to how this income would suffice to allow it to pay off over $10 million in debt in a reasonable period of time. In summary, Attack Properties' arguments fail to undermine the bankruptcy court's factual findings that the business had no chance to successfully reorganize. Attack Properties raised similar arguments before the bankruptcy court in its Response to the motion to dismiss, and the bankruptcy court properly rejected them.

The court also agrees with the bankruptcy court that these facts constitute "cause" for dismissal. Failure to propose a plan for reorganization is not among the specifically enumerated grounds for "cause" in § 1112(b)(4), but that list is not exhaustive, and courts may find "cause" for other equitable reasons. *See Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1102 (10th Cir. 1991) ("Section 1112(b) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss a chapter 11 case for 'cause.'"); *In re Whetten*, --- B.R. ---, 2012 WL 2018259, at *1 (Bankr. D. Colo. June 5, 2012) (acknowledging that "[t]he list is illustrative, not exhaustive."). The list includes numerous factors that generally contemplate the impossibility of successful reorganization, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "failure . . . to file or confirm a plan, within the time fixed by this title or by order of the court," and "inability to

effectuate substantial consummation of a confirmed plan." § 1112(b)(4)(A), (J), (M). The reasons given by the bankruptcy court are of the same nature—essentially, the judge concluded that further suspension of the creditors' rights in order to allow Attack Properties to reorganize would be futile, as there had been no progress in that direction, and there was little prospect of any future progress. *See Woodbrook*, 19 F.3d at 317 ("The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless.").

As Ringgold met its burden to establish "cause" for dismissal, the burden shifted to Attack Properties to satisfy the requirements of § 1112(b)(2) by showing that "there is a reasonable likelihood that a plan will be confirmed." Given that, as discussed above, Attack Properties could not establish a reasonable likelihood that a plan would be confirmed in a reasonable period of time, Attack Properties cannot satisfy § 1112(b)(2). The court therefore concludes that the bankruptcy court did not abuse its discretion in dismissing the case. *See id.* at 322 ([B]ankruptcy courts are given a great deal of discretion to say when enough is enough.").

**B. Turnover of the Property Pursuant to 11 U.S.C. § 543(b)**

Finally, Attack Properties challenges the bankruptcy court's order excusing the receiver from turning over the Property to Attack Properties pursuant to 11 U.S.C. § 543(b). Generally, once a bankruptcy case commences, a custodian of property of a debtor must "deliver to the trustee [or debtor-in-possession acting as a trustee] any property of the debtor held by or transferred to such custodian." § 543(b)(1). A receiver appointed by a state court is a custodian subject to § 543(b)(1). *In re Franklin*, 2012 WL 3470897, at *3. Compliance with this section of the code may be excused "if the

interests of creditors . . . would be better served by permitting a custodian to continue in possession" of the property. § 543(d)(1). Relevant to whether the creditors' best interests would be served by permitting the receiver to retain control are the likelihood of reorganization, whether the debtor has mismanaged the property, whether turnover would injure the creditors, and whether the debtor would use the property for the creditors' benefit. *In re Franklin*, 2012 WL 3470897, at *4.

In this case, the bankruptcy court found that turning the Property over to the debtor would not be in the creditors' interests, given the actions of Grover and Attack Properties with regard to the foreclosure case. The state court records show that, after the receiver was appointed, Grover failed to turn business proceeds over to the receiver and used rent and income from the business to pay his personal expenses, in violation of the state court's order. Given this history, the bankruptcy court concluded that there was little prospect that Grover and Attack Properties would manage the Property for the benefit of the creditors.

Having reviewed the record on appeal, the court concludes that the bankruptcy court did not clearly err in concluding that Grover would not manage the property for the benefit of the creditors. Based on these facts, the bankruptcy court did not abuse its discretion in finding that compliance with the turnover requirement should be excused. Furthermore, the likelihood of successful reorganization is another factor a court should consider in evaluating whether creditors will be better served if the receiver is retained. *See e.g.*, *id.* at *4 (excusing turnover because debtor lacked "a viable plan to reorganize"); *In re Bryan Manor, LLC*, 422 B.R. 278, 289 (Bankr. D. Kan. 2010). The

bankruptcy court concluded that confirmation of a reorganization plan was not likely, and, as discussed above, this court finds no clear error in those factual findings.

### IV. CONCLUSION

The bankruptcy court's order dismissing the chapter 11 case of Attack Properties is affirmed, as is the bankruptcy court's order excusing the state-court's appointed receiver from compliance with the requirements of § 543(b). Attack Properties' motion for a stay pending appeal is denied as moot.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 11, 2012